## Q. Attempts to Recover Phones and File Complaints

383. Approximately an hour after the incident, Plaintiff went to the CHP San Luis Obispo area office.

384. Plaintiff demanded that his phones be returned.

385. Plaintiff demanded that a police report be filed concerning the false emergency calls.

386. Plaintiff was advised that a report had already been taken and that an investigation was being completed.

387. Sergeant Wilson did not say that Plaintiff was under arrest but said that Plaintiff was under investigation for a crime.

388. Plaintiff did not sign a personal recognizance bond or release agreement.

389. Plaintiff was not under arrest when he talked to Sergeant Wilson.

390. During the interaction, Sergeant Wilson questioned Plaintiff regarding the alleged crime but failed to advise Plaintiff of his Miranda rights.

391. Plaintiff told Sergeant Wilson that he wanted to file a formal complaint against all officers involved in the incident.

392. Plaintiff attempted to file a complaint at CHP after his phones were taken for safe keeping.

393. Plaintiff alleges that CHP refused to accept or process his complaint.

394. After refusing to take complaint and not having a supervisor on scene Defendant Lopez then ran the license plates of a friend who came to assist plaintiff after both his phones were taken.

395. Plaintiff was not from the area and was hours from anywhere that he was familiar with.

396. Plaintiff phones were his navigation and access to money.

397. Plaintiff left the CHP office and went to the San Luis Obispo Police Department.

398. Plaintiff complained that CHP had taken his phones without cause.

399. Plaintiff attempted to file a complaint with the San Luis Obispo Police Department concerning the July 10, 2024 incident.

400. Plaintiff's attempt to file or make a complaint at SLOPD was recorded on livestream.

401. Plaintiff was told by SLOPD Watch Commander that all officers that had been at the call had gone home and no officers filed a report therefore he didn't know what happened

COMPLAINT   28

402. The SLOPD Watch commander went inside and had Officer Church come out and take a police report.

403. Officer church came out and said that many of the officers were still inside contradicting the Watch Commanders statements.

404. Plaintiff later sought records of that complaint.

405. Plaintiff was later advised that no record of Plaintiff's complaint could be located.

406. The absence of complaint records is relevant to the preservation, maintenance, reliability, and completeness of agency records concerning the incident.

## R. Public Records Requests, CPRA Runaround, and Missing Records

407. Plaintiff and associates on his behalf, submitted multiple California Public Records Act requests seeking reports, body-worn camera footage, dispatch records, CAD records, complaint records, communications, and records concerning the seized phones.

408. On November 18, 2024, a Public Records Act request was submitted to San Luis Obispo County Clerk seeking, "the police report, body cam footage of officers on scene for 7/10/24 911 call for a man with gun."

409. On November 19, 2024, San Luis Obispo County acknowledged receipt of that request and stated in writing that the request had been forwarded to the correct department.

410. On November 19, 2024, the San Luis Obispo County Sheriff's Office issued a written response stating it was unable to locate responsive records based on the information provided even though a man with a machine gun was reported in their jurisdiction.

411. The Sheriff's Office response came despite the request identifying the date, general subject matter, and body-worn camera footage sought.

412. At 5:21 PM: an entry into the police incident report stating "1039 SLOSO - PTY CLR LOCAL" this entry appears to indicate CHP contacted SLOSO (San Luis Obispo Sheriff's Office) and received information that you were "clear local" (no local wants/warrants or local issues found).

413. Plaintiff alleges that the CAD entry in the police incident report shows SLOSOs involvement with the incident.

414. The Sheriff's Office also cited Government Code section 7923.600 concerning body-worn camera footage.

415. Plaintiff alleges that records requests concerning a City of San Luis Obispo / SLOPD incident were routed to, answered by, or processed through the San Luis Obispo County Sheriff's Office, even though the incident involved SLOPD and CHP personnel.

416. Plaintiff alleges that this routing contributed to confusion, delay, incomplete searches, and non-production of responsive records.

417. Plaintiff is informed and believes that additional City of San Luis Obispo custodians, departments, and records systems possessed responsive records that were not searched or were not adequately searched.

418. On November 22, 2024, the SLOPD acknowledged Public Records Request No. PRR-24-162.

419. That request sought records concerning communications between SLOPD and LAPD and/or Detective Michelle Gomez concerning or mentioning Plaintiff.

420. That request also sought communications from LAPD and/or Detective Michelle Gomez to SLOPD concerning or mentioning Plaintiff.

421. That request further sought communications involving outside parties, Kendrick Moxon, and/or the Church of Scientology concerning or mentioning Plaintiff.

422. On or about December 2, 2024, the City of San Luis Obispo acknowledged receipt of Public Records Request No. PRR24345.

423. Deputy City Clerk Sara Armas advised in writing that the City had received the request and would begin searching for responsive documents.

424. Internal City communications later showed that City personnel discussed searches of police and email systems.

425. Internal City communications showed that City personnel searched for Plaintiff's name and other terms.

426. Internal City communications reflected that City personnel located references relating to the July 10, 2024 event in briefing materials.

427. Internal City communications referenced Scientology in connection with July 10, 2024 briefing materials.

428. Internal City communications referenced police logs and summary sheets associated with incident number 240710089.

429. SLOPD records later revealed Incident No. 240710069 relating to the reported weapon offense.

COMPLAINT  30

430. Deputy City Clerk Sara Armas circulated PRR24345 internally to Eric Wooten, Marjorie Menesez, Kelly Holcomb, the City Attorney, Adria Smith, Rick Scott, Aaron Schafer, and the City Clerk.

431. Despite these representations, subsequent internal communications produced by the City referenced July 10, 2024 briefing materials, Scientology-related entries, police logs, summary sheets, and incident numbers associated with the events described in this Complaint.

432. Plaintiff alleges these later-produced records directly contradicted prior statements that no responsive records existed and are relevant to municipal knowledge, recordkeeping practices, public-records handling, and ratification of the conduct described herein.

433. The Police Clerk stated via email on December 2, 2024 *"We do not have a "Scott Hochstetter" or "Kendrick Moxon" in our system so there are no responsive Police records to provide"*.

434. Plaintiff alleges that this statement was misleading because City personnel had already identified records relating to the July 10, 2024 incident, including briefing materials, police logs, summary sheets, and incident-number references associated with the events described herein.

435. Plaintiff further alleges that responsive records could be located through incident numbers, dates, involved agencies, dispatch records, and other identifying information even if they were not indexed under the names "Scott Hochstetter" or "Kendrick Moxon."

436. City Attorney Eric Wooten stated "I searched for any mention of "Hochstetter" after 7-9-24. Nothing came up."

437. In that internal email, Armas described PRR24345 as a request for "multiple correspondence records regarding SLOPD, LAPD, The Church of Scientology, and three other listed individuals."

438. Armas further stated that "the City Attorney's office will conduct the search for emailed communications as opposed to staff."

439. The emails inform everyone on the email that the public records request was looking for any files, reports etc on Scott Hochstetter.

440. Despite these representations, subsequent internal communications produced by the City referenced July 10, 2024 briefing materials, Scientology-related entries, police

logs, summary sheets, and incident numbers associated with the events described in this Complaint.

441. Plaintiff alleges these later-produced records directly contradicted prior statements that no responsive records existed and are relevant to municipal knowledge, recordkeeping practices, public-records handling, and ratification of the conduct described herein.

442. Deputy City Clerk of The City of San Luis Obispo stated in an email on December 3, 2024 that "No responsive records were found."

443. This internal email is significant because it shows that the City understood PRR24345 to involve SLOPD, LAPD, Scientology, and correspondence records, and that the City Attorney's Office controlled or conducted the email search.

444. Plaintiff alleges that records concerning the City Attorney's search, including search terms, custodians searched, systems searched, emails located, emails withheld, and emails deemed nonresponsive, are relevant to Plaintiff's claims concerning missing records, nonresponsive CPRA handling, and delayed disclosure.

445. Plaintiff alleges that the existence of SLOPD incident numbers, dispatch records, briefing references, and internal emails contradicts or undermines responses suggesting that no records existed or could not be located.

446. On or about August 13, 2025, Plaintiff submitted a CPRA request to San Luis Obispo County seeking reports and files concerning Plaintiff, warrants concerning Plaintiff's property, body-worn camera footage, and reports associated with the July 10, 2024 swatting incident.

447. On August 14, 2025, San Luis Obispo County acknowledged receipt of Plaintiff's request and advised Plaintiff that it had been forwarded to the appropriate department.

448. Plaintiff later received a response stating that no records existed under the name Scott Hochstetter relating to the July 10, 2024 incident.

449. Plaintiff alleges that certain requests submitted to the City of San Luis Obispo or City Clerk were routed to or answered by the San Luis Obispo County Sheriff's Office.

450. Plaintiff alleges that those requests should have been searched by SLOPD and/or CHP because the incident occurred within the City of San Luis Obispo and involved SLOPD and CHP personnel.

451. The Sheriff's Office later confirmed that if the incident occurred within the City of San Luis Obispo, the matter would fall under the jurisdiction of the San Luis Obispo Police Department rather than the Sheriff's Office.

452. On or about September 14, 2025, Plaintiff submitted CPRA Request No. R009326-091425 to CHP seeking records relating to the July 10, 2024 incident.

453. Plaintiff's CHP request sought records concerning Officer Mitchell Hendricks, reports concerning Plaintiff, property seized from Plaintiff, communications regarding the seized property, booking information, and the identities of officers involved.

454. CHP later stated that it possessed records responsive to Plaintiff's request.

455. CHP stated that certain information was withheld pursuant to asserted privacy exemptions.

456. CHP stated that it did not possess responsive call-for-service audio recordings and asserted that any such recordings may have been purged pursuant to retention schedules.

457. CHP also stated that it did not possess responsive records concerning portions of Plaintiff's request.

458. Plaintiff alleges that the repeated routing, referrals, no-record responses, delayed disclosures, missing complaint records, and later-discovered incident records are relevant to the preservation, disclosure, handling, credibility, and reliability of evidence concerning the July 10, 2024 detention and seizure.

## S. Harm to Plaintiff

459. As a direct and proximate result of Defendants' actions, Plaintiff was detained at gunpoint.

460. Plaintiff suffered loss of liberty.

461. Plaintiff suffered fear, humiliation, emotional distress, anxiety, and related harm.

462. Plaintiff suffered loss of use and possession of two Samsung Galaxy S24 Ultra phones.

463. Plaintiff suffered property deprivation valued at approximately $2,600.

464. Because Plaintiff's essential tools of digital production, media publication, and journalism were unlawfully seized and withheld, Plaintiff suffered an immediate, severe, and continuous disruption to his digital platform analytics, subscriber

engagement, and livestream monetization revenue, resulting in concrete financial and commercial injury.

465. Plaintiff suffered interference with his ability to record police activity.

466. Plaintiff suffered interference with his ability to livestream, protest, publish, and document matters of public concern.

467. Plaintiff suffered loss of access to private digital data, communications, video files, livestreaming tools, recordings, and protest-related evidence.

468. Plaintiff suffered violation of his constitutional privacy interests in the contents and possession of his phones.

469. Plaintiff incurred time, expense, and burden attempting to recover his phones, obtain records, file complaints, and determine why his phones were seized, transferred, searched, retained, and later returned.

470. Plaintiff suffered extreme emotional distress from defamatory statements claiming that Plaintiff was swatting himself for clicks and views.

471. Plaintiff currently has a defamation lawsuit against one of the main people perpetrating that false claim in Florida.

472. Plaintiff lost channel memberships, viewers and his overall standing in the protesting and anti-Scientology community that can never come back.

## V. CAUSES OF ACTION

### A. COUNT ONE  42 U.S.C. § 1983
**Fourth Amendment — Unlawful Seizure of Person / Unreasonable DetentionAgainst Defendants Perez, Hendricks, Wilson, Bradshaw, Olsen, Lopez, SLOPD DOE Officers, CHP DOE Officers, and DOES 1–50**

473. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

474. At all relevant times, Defendants acted under color of state law.

475. Plaintiff was seized within the meaning of the Fourth Amendment when law-enforcement officers conducted a felony stop, ordered Plaintiff from his

recreational vehicle at gunpoint, detained him, restricted his freedom of movement, and prevented him from leaving.

476. Plaintiff does not challenge the initial law-enforcement response to a reported armed-subject call. Plaintiff challenges the continued detention and investigation after the reported threat had been dispelled.

477. After Plaintiff was secured, the RV was cleared, and no firearm, machine gun, weapon, or dangerous occupant was found, Defendants lacked reasonable suspicion or probable cause to continue treating Plaintiff as a criminal suspect.

478. Plaintiff informed Defendants that he had been repeatedly swatted, that he was livestreaming, that he had been swatted the night before in Ventura, and that readily available livestream and call-log evidence could show he was not the false caller.

479. Despite this information, Defendants continued to investigate Plaintiff as a suspect rather than treating him as a victim of a false emergency report.

480. Defendants' continued detention of Plaintiff after the safety justification ended was unreasonable under the Fourth Amendment.

481. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, fear, humiliation, emotional distress, anxiety, and related damages.

## B. COUNT TWO  42 U.S.C. § 1983

**Fourth Amendment — Unlawful Search and Seizure of Property / Cellular Telephones Against Defendants Perez, Hendricks, Wilson, Bradshaw, Olsen, Gomez, Proper, McMichael, CHP DOE Officers, LAPD DOE Officers, and DOES 1–50**

482. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

483. At all relevant times, Defendants acted under color of state law.

484. Plaintiff had a possessory and privacy interest in his two Samsung Galaxy S24 Ultra cellular telephones.

485. Plaintiff's phones contained extensive private digital information, including communications, photographs, videos, recordings, livestream materials, contacts, location data, messages, applications, documents, protest-related evidence, and personal records.

486. Plaintiff's phones were also tools used for First Amendment activity, including recording police, livestreaming, documenting protest activity, communicating with viewers, preserving evidence, and publishing matters of public concern.

487. Defendants seized Plaintiff's phones without Plaintiff's consent and without presenting a warrant at the time of seizure.

488. Before the phones were seized, Plaintiff had been secured, the RV had been cleared, no firearm or machine gun had been found, no dangerous person had been found, and Plaintiff had offered readily available exculpatory evidence.

489. The seizure of Plaintiff's phones was not necessary for officer safety and was not part of a lawful protective sweep. It was a separate investigative seizure.

490. Defendants lacked probable cause, consent, exigent circumstances, or a warrant justifying the initial seizure of Plaintiff's phones.

491. Defendant Wilson directed or approved the seizure of the phones. Defendant Perez took custody of the phones. Defendant Hendricks received, booked, documented, or handled the phones. Other CHP Defendants participated in, approved, reviewed, ratified, or failed to correct the unlawful seizure and retention.

492. Defendant Gomez later sought or obtained authority to search Plaintiff's phones after they had already been seized and placed into CHP custody.

493. The later warrant process did not cure the initial warrantless seizure, nor did it justify the prolonged retention, transfer, forensic processing, or search of Plaintiff's phones if based on omissions, misstatements, or facts insufficient to establish probable cause.

494. Defendants' seizure, transfer, retention, forensic processing, and search of Plaintiff's phones violated the Fourth Amendment.

495. As a direct and proximate result of Defendants' conduct, Plaintiff suffered deprivation of property, loss of use, invasion of privacy, emotional distress, interference with recording and livestreaming, loss of access to private digital data, and related damages.

## C. COUNT THREE  42 U.S.C. § 1983

**Fourth Amendment — Judicial Deception / Material Omissions in Digital Search Warrant Against Defendant Michelle Gomez, LAPD DOE Officers, and DOES 1–50**

496. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

497. At all relevant times, Defendant Gomez and related LAPD DOE Defendants acted under color of state law.

498. After CHP seized Plaintiff's phones, Defendant Gomez sought a search warrant authorizing a broad search of Plaintiff's digital data.

499. Plaintiff alleges that the warrant affidavit omitted material facts known or reasonably available to law enforcement, including that the original caller refused to meet officers, refused verification, gave suspicious explanations, disconnected or avoided direct contact, and was believed by dispatch to be possibly providing a false representation.

500. Plaintiff further alleges that the warrant materials omitted or minimized facts showing Plaintiff was livestreaming, had repeatedly reported being swatted, had been swatted the night before, had offered call-log and livestream evidence, and had been released after no firearm, machine gun, weapon, or dangerous occupant was found.

501. Plaintiff alleges that these omissions and/or misstatements were intentional or reckless and were material to the magistrate's probable-cause determination.

502. Had the omitted facts been included, the warrant application would not have established probable cause to search the broad categories of digital data requested from Plaintiff's phones.

503. Defendants' conduct violated Plaintiff's Fourth Amendment rights.

504. As a direct and proximate result of Defendants' conduct, Plaintiff suffered invasion of privacy, deprivation of property, unlawful search of digital information, emotional distress, and related damages.

## D. COUNT FOUR 42 U.S.C. § 1983 First Amendment —

**Interference with Recording, Livestreaming, Protest Activity, and Retaliation Against Defendants Perez, Hendricks, Wilson, Bradshaw, Olsen, Gomez, Proper, McMichael, LAPD DOE Officers, CHP DOE Officers, and DOES 1–50**

505. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

506. At all relevant times, Defendants acted under color of state law.

507. Plaintiff engaged in protected First Amendment activity, including protesting, livestreaming, recording police activity, criticizing Scientology, criticizing government

conduct, documenting matters of public concern, communicating with viewers, and publishing video evidence.

508. Plaintiff's cellular telephones were essential tools for his protected speech, recording, livestreaming, newsgathering, publication, and protest activity.

509. Defendants knew or became aware that Plaintiff was a livestreamer, protester, and public critic of Scientology.

510. One of Plaintiff's phones was actively recording or configured to record police activity when officers interfered with, moved, disabled, seized, or otherwise prevented Plaintiff from using it.

511. After the reported threat was dispelled and no weapon was found, Defendants seized Plaintiff's phones and caused the phones to be retained for a prolonged period.

512. The seizure and retention of Plaintiff's phones prevented or substantially burdened Plaintiff's ability to record police, livestream, publish, communicate with viewers, preserve evidence, and engage in protest activity.

513. Plaintiff alleges that Defendants' actions were motivated, at least in part, by Plaintiff's protected First Amendment activity, including his livestreaming, recording of police activity, and protest activity concerning Scientology.

514. Defendants' conduct would chill a person of ordinary firmness from continuing to record police activity, livestream police encounters, protest, criticize powerful private actors, criticize law enforcement conduct, or document matters of public concern.

515. Defendants lacked a legitimate law-enforcement basis to seize and retain Plaintiff's phones after Plaintiff was secured, the RV was cleared, no weapon was found, and information available to officers indicated Plaintiff was likely the victim of a swatting incident.

516. Defendants' conduct violated Plaintiff's rights under the First Amendment.

517. As a direct and proximate result of Defendants' conduct, Plaintiff suffered interference with protected speech, loss of recording and livestreaming ability, loss of access to expressive tools, disruption of protest activity, emotional distress, fear, anxiety, humiliation, and related damages.

### E. COUNT FIVE 42 U.S.C. § 1983

### Fourteenth Amendment — Equal Protection / Selective Enforcement

### Against Defendants Perez, Hendricks, Wilson, Bradshaw, Olsen, Gomez, Proper, McMichael, LAPD DOE Officers, CHP DOE Officers, and DOES 1–50

518. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

519. At all relevant times, Defendants acted under color of state law.

520. Plaintiff was an activist, livestreamer, protester, and public critic of Scientology.

521. Defendants knew or became aware that Plaintiff had been repeatedly targeted by suspected false emergency calls and that Plaintiff claimed to be a victim of swatting.

522. Despite the absence of any firearm, machine gun, weapon, or dangerous occupant, and despite Plaintiff's offer of readily available exculpatory evidence, Defendants treated Plaintiff as a criminal suspect and seized his phones.

523. Plaintiff is informed and believes that similarly situated persons who are victims of false emergency reports are not ordinarily subjected to prolonged seizure, transfer, forensic processing, and search of their phones after no weapon is found and they are released without arrest or charges.

524. Plaintiff is informed and believes Defendants treated Plaintiff differently because of his protest activity, livestreaming activity, public criticism of Scientology, and repeated documentation of police responses.

525. There was no rational basis for treating Plaintiff differently from other similarly situated victims of false emergency reports after the reported threat was dispelled.

526. Defendants' conduct deprived Plaintiff of equal protection of the laws in violation of the Fourteenth Amendment.

527. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages.

### F. COUNT SIX  42 U.S.C. § 1983

### Failure to Intervene Against Defendants Perez, Hendricks, Wilson, Bradshaw, Olsen, Lopez, Proper, McMichael, CHP DOE Officers, LAPD DOE Officers, and DOES 1–50

528. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

COMPLAINT  39

529. At all relevant times, Defendants acted under color of state law.

530. One or more Defendants unlawfully continued Plaintiff's detention, seized Plaintiff's cellular telephones, caused the phones to be retained, transferred, searched, or failed to return the phones after the basis for the detention and seizure had ended.

531. Other Defendants were present, participated in the investigation, had supervisory authority, reviewed the incident, handled the phones, approved the seizure, received reports, or otherwise had a realistic opportunity to prevent, stop, correct, or limit the constitutional violations.

532. Defendants knew or reasonably should have known that Plaintiff had been secured, that no firearm or machine gun had been found, that the RV had been cleared, that Plaintiff claimed to be a swatting victim, and that Plaintiff had offered exculpatory evidence.

533. Despite having an opportunity to intervene, Defendants failed to take reasonable steps to prevent or stop the unlawful detention, seizure, retention, transfer, search, or interference with Plaintiff's protected activity.

534. Defendants' failure to intervene violated Plaintiff's constitutional rights.

535. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages.

## G. COUNT SEVEN 42 U.S.C. § 1983

### Supervisor Liability / Ratification Against Defendants Wilson, McMichael, Proper, Gomez, Supervisory DOE Defendants, and DOES 1–50

536. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

537. At all relevant times, Defendants acted under color of state law.

538. Defendant Wilson directed, approved, reviewed, or ratified the seizure of Plaintiff's phones and the continued treatment of Plaintiff as a suspect after the reported threat was dispelled.

539. Defendants McMichael, Proper, Gomez, and other supervisory or reviewing Defendants participated in, requested, reviewed, approved, ratified, or failed to correct reports, records, warrant materials, evidence handling, phone retention, phone transfer, or related investigative decisions concerning Plaintiff.

540. Plaintiff alleges that supervisory Defendants knew or reasonably should have known of facts showing that the original emergency report was suspicious, that no weapon was

COMPLAINT  40